UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

SHALANDA M. RYDER,

                        Plaintiff,

        -vs-                          **No. 1:15-CV-00241 (MAT)**
                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                        Defendant.

─────────────────────────────

## I.   Introduction

    Represented by counsel, Shalanda M. Ryder ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II.  Procedural History

    The record reveals that in January 2012, plaintiff (d/o/b December 6, 1977) applied for SSI, alleging disability as of February 9, 2009. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge

Timothy M. McGuan ("the ALJ") on May 16, 2013. The ALJ issued an unfavorable decision on June 7, 2013. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of Evidence

#### A.    Evidence Before the ALJ at the Time of the Decision

The Court will first address evidence before the ALJ at the time of the decision. At that time, the medical record included certain records of treatment with Child and Family Services ("CFS"), a report of a consulting examination performed by Susan Santarpia, Ph.D., and a pscyhiatric review technique and mental residual functional capacity ("RFC") completed by non-examining consultant Dr. Hillary Tzetzo.

As plaintiff points out, the treatment records from CFS and before the ALJ at the time of the decision consisted chiefly of records of an initial assessment and follow-up treatment plans. However, although these records clearly indicate that plaintiff was in continuing treatment with CFS, the records do not include substantive notes documenting plaintiff's regular treatment at CFS.

In January 2012, plaintiff was evaluated by CFS for a comprehensive assessment, in which she reported hearing voices which caused her to be distracted; problems with sleep, concentration, and short-term memory; and frequent crying associated with depression. Plaintiff reported being hospitalized as an adolescent, placement in a group home setting, and placement on prescription medications at that time. Plaintiff was diagnosed

with psychotic disorder, not otherwise specified ("NOS") and her treating provider, Elizabeth Morris, LCSW, assessed her with a global assessment of functioning ("GAF") score of 50, indicating serious symptoms. See Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders-Text Revision ("DSM-IV-TR"), at 34 (4th ed., rev. 2000).

The record before the ALJ contained several "treatment plans" from CFS. The first, from February 2012, indicated that the main objectives of plaintiff's treatment included the clear definition of symptoms, identification of irrational thoughts, practicing good sleep and hygiene, and medication management. It stated that plaintiff would be "discharged when she [was] stabilized and able to cope with her symptoms." T. 232. The record also contains a prescription medication summary covering the time period from April 2012 through January 2013, a further indication of plaintiff's regular treatment at CFS.

On February 22, 2012, Nurse Practitioner ("NP") Diana Page completed a psychiatric evaluation. Plaintiff reported hearing voices which "at times . . . talk[ed] against her," and NP Page noted that in "reviewing [plaintiff's] chart it appear[ed] that she [did] have a long history of mental health issues." T. 259. Plaintiff reported three prior hospitalizations in the late 1980s, as well as at least one past suicide attempt and an incident in which she cut her husband with a knife. Mental status examination was unremarkable except that plaintiff reported stating that she

"always [had] a low level of chatter" distorting her perceptions. NP Page assessed schizoaffective disorder, psychotic disorder, NOS, possibility of paranoid schizophrenia, and "mood shift of bipolar type." T. 261. NP Page also noted "significant family history that . . . supported mental health issues that would indicate a general predisposition." Id. NP Page did not offer any assessment of plaintiff's functional capabilities.

A second CFS treatment plan completed in November 2012 is much longer and more detailed than the initial February 2012 treatment plan. It included similar objectives but with attendant notations indicating that plaintiff had been engaging in regular treatment at CFS. A later treatment plan dated January 2013 was essentially identical, but noted that medication was helping to lessen plaintiff's symptoms of auditory hallucinations. Once again, it was noted that plaintiff would be "discharged when she [was] stabilized and able to cope with her symptoms." T. 271.

In March 2012, Dr. Santarpia completed a report of a consulting examination of plaintiff, in which she assessed a largely unremarkable mental status examination. Dr. Santarpia opined that plaintiff suffered from anxiety disorder, NOS, and that she should "continue with psychological/psychiatric treatment as currently provided" and consider vocational training. T. 206. Notably, Dr. Santarpia did not diagnose schizophrenia. She opined that plaintiff was "able to follow and understand simple directions and instructions, perform simple tasks independently, maintain

4

attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, and appropriately deal with stress." T. 205. She further opined that plaintiff was mildly impaired in performing complex tasks independently and relating adequately with others, and that these difficulties were "caused by a lack of motivation." Id.

Dr. Hillary Tzetzo, a non-examining consultant, reviewed the evidence before the ALJ. She assessed plaintiff as suffering from "possible depression with psychotic features most likely," "after consideration of all the evidence in file," T. 210, also noting that plaintiff exhibited cannabis dependence. According to Dr. Tzetzo, plaintiff suffered from mild restrictions of activities of daily living ("ADLs"), moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace, with no prior episodes of decompensation. Dr. Tzetzo also opined as to various moderate limitations in memory, sustained concentration, social interaction, and adaptation.

At her hearing held in May 2013, plaintiff testified that she was withdrawn and anxious around people, she had feelings of worthlessness, and she experienced paranoia regarding social interactions. She testified that she was currently treating with CFS and had been since January 2012. Plaintiff stated that she saw her therapist, social worker Morris, at CFS on a biweekly basis, and that she also treated with NP Malinowski, who had prescribed

Latuda and lithium. Plaintiff testified that the medication "help[ed] a little bit," but that the "issues" she had were "not going anywhere." T. 34. She stated that she heard voices and experienced racing thoughts continuously, which interfered with her sleep and caring for her child. She testified that she went grocery shopping early so as to avoid people. Her mother, her son's father, and her best friend helped her with ADLs and with childcare. According to plaintiff, this was the extent of her social network. She testified that she had worked as a nurse's assistant and a housekeeper, but could not hold a job because her emotional difficulties made it impossible for her to "give [her] time and attendance." T. 38-39.

Vocational expert ("VE") Timothy Janikowski testified that a hypothetical individual with no exertional limitations and nonexertional limitations including only occasional contact with the public and occasional ability to understand, remember, and carry out complex and detailed tasks, could not perform plaintiff's past relevant work as a nurse's aide, but could perform other jobs existing in significant numbers in the national economy.

**B.   Evidence Submitted to the Appeals Council**

Plaintiff submitted additional documentation of treatment at CFS to the Appeals Council. These documents included regular treatment notes spanning the time period January 2012 through May 2013, detailing plaintiff's treatment with social worker Morris and NP Malinowski. Upon review, the Court notes that the records

document an ongoing diagnosis of schizoaffective disorder and repeated abnormal mental status examinations, including findings of depressed affect or elevated mood, continued auditory hallucinations consistently reported as constant, occasional disorientation from place and time, passive suicidal ideation, and abnormal or psychotic thoughts. See T. 336, 338, 354, 359, 372, 373. In May 2013, NP Malinowski assessed plaintiff's GAF at 45, again indicating serious symptoms.

Also in May 2013, NP Malinoswki submitted a medical source statement opining as to plaintiff's functional limitations. She reported that plaintiff was diagnosed with schizoaffective disorder, a condition which was expected to be permanent. NP Malinowski opined that plaintiff would be "very limited" in understanding, remembering, and carrying out instructions; maintaining attention and concentration; interacting appropriately with others; maintaining socially appropriate behavior without exhibiting behavioral extremes; and functioning in a work setting at a consistent pace.

## IV. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 11, 2012, the application date. At step two, the ALJ found that plaintiff suffered from the following severe

7

impairments: psychotic disorder and schizoaffective disorder. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In assessing plaintiff's mental limitations, the ALJ found that plaintiff had mild restrictions in ADLs, moderate limitations in social functioning, and moderate difficulty with concentration, persistence, or pace.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was able to interact with the public only occasionally and she could understand, remember, and carry out detailed instructions only occasionally. In formulating his RFC, the ALJ gave "significant" weight to Dr. Santarpia's opinion, "because it [was] consistent with the findings of her examination," and "significant" weight to Dr. Tzetzo's opinion, "because it [was] consistent with the objective evidence of record." T. 19-20. At step four, the ALJ determined that plaintiff was not capable of performing past relevant work as a nurse's assistant. At step five, the ALJ found that considering plaintiff's age, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ thus found that plaintiff was not disabled.

## V.    Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff's primary contention is that the ALJ failed to adequately develop the record, and that the ALJ's duty to do so was triggered by the evidence before him at the time of the hearing, which plaintiff argues indicated an obvious absence of treatment notes from CFS. Plaintiff also argues that the Appeals Council erred in failing to detail its reasoning for finding that the new evidence submitted to it would not alter the ALJ's decision, and that the Appeals Council should have found that the new evidence could have reasonably altered the ALJ's decision.

The new evidence became a part of the administrative record when the Appeals Council denied review. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). Where this occurs, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015). This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence is included in

9

the administrative record. Because the ALJ's decision was the final agency decision, the Court will not address plaintiff's arguments regarding the Appeals Council's alleged errors in considering the new evidence.

For the reasons that follow, the Court concludes that the ALJ erred in failing to carry out his duty of further developing the administrative record. Additionally, the Court finds that there is a reasonable possibility that the new evidence submitted to the Appeals Council would have influenced the Secretary to decide plaintiff's application differently. See <u>Jones v. Sullivan</u>, 949 F.2d 57, 60 (2d Cir. 1991).

The Commissioner argues that the record in this case was complete at the time of the hearing and decision, and that therefore the ALJ was under no duty to further develop it. The Court disagrees. As plaintiff points out, the records present before the ALJ clearly indicated the existence of a regular treatment relationship between plaintiff and CFS. Yet, as the ALJ appeared to recognize at the hearing (see T. 31-32), the records before the ALJ from CFS consisted only of a report of an initial consultation and subsequent treatment plans, which, upon the Court's review, obviously indicate the likely presence of further, substantive treatment notes. However, the ALJ proceeded to make his determination without the benefit of a single substantive treatment note following plaintiff's initial evaluation at CFS. This was error.

The regulations provide that although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and *making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources*." 20 C.F.R. § 404.1545 (emphasis added) (citing 20 C.F.R. §§ 404.1512(d) through (f)). Here, the record before the ALJ was devoid of any substantive treatment notes, despite plaintiff's testimony that she treated biweekly with CFS and obvious indication from treatment plans that she was indeed regularly treating with CFS. Although, at the hearing, plaintiff's counsel indicated that treatment records from CFS were present in the record, it was apparent from the actual records that more treatment notes likely existed, such that the ALJ should have made an effort to obtain them. See, e.g, Corey v. Astrue, 2009 WL 4807609, *4 (N.D.N.Y. Dec. 8, 2009) (noting that ALJ had duty to develop record where there was a "gap in the record that must be remedied"); Aiello v. Comm'r of Soc. Sec., 2009 WL 87581, *5, n.2 (N.D.N.Y. Jan. 9, 2009) (ALJ "should have attempted to contact that physician to discover any pertinent medical records that could relate to [alleged] conditions"); Metaxotos v. Barnhart, 2005 WL 2899851, *5 (S.D.N.Y. Nov. 3, 2005) (remanding where ALJ

failed to develop the record by not obtaining treatment notes, records, or opinions from plaintiff's treating psychiatrist).

The ALJ's failure to develop the record is especially significant in this case, because the ALJ's decision repeatedly cites a lack of "objective evidence" or "examples" in the record of plaintiff's complained-of symptoms. T. 20. Indeed, he gave Dr. Santarpia's opinion, which failed to recognize plaintiff's longstanding diagnosis of schizoaffective disorder, "significant weight" because it was "consistent" with her own examination, and he gave "significant weight" to non-examining consultant Dr. Tzetzo's opinion because it was "consistent with the objective evidence of record." T. 19-20.

Moreover, the error is significant because the records actually produced to the Appeals Council reasonably could have influenced the Secretary to decide plaintiff's application differently. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991). As noted above, those records contain a very restrictive functional assessment from treating source NP Malinowski, as well as documented evidence of repeated abnormal mental status exams and consistent reports from plaintiff that she experienced continuous auditory hallucinations and racing thoughts. Certainly, such evidence could have influenced the ALJ regarding plaintiff's credibility. The evidence also reasonably would have altered the weight he gave to the consulting opinions, especially Dr. Tzetzo's,

which was entirely based on a review of the incomplete evidence in the administrative record.

Accordingly, the case is remanded for reconsideration of the entire administrative record, which should include the new evidence submitted to the Appeals Counsel. On remand, the ALJ is directed to fully consider plaintiff's treatment with CFS, and to specifically consider and weigh the opinion of treating nurse practitioner Malinowski. Although NP Malinowski is an "other source" under the regulations, her opinion is entitled to be considered and weighed especially considering the fact that she was one of plaintiff's regular treating sources. See, e.g., Kentile v. Colvin, 2014 WL 3534905, *8 (N.D.N.Y. July 17, 2014) (finding that, especially because of plaintiff's treatment relationship with nurse practitioner, nurse practitioner's opinion was entitled to be considered and discussed); Lopez v. Barnhart, 2008 WL 1859563, * 15 (S.D.N.Y. 2008) ("[the social worker's] observations would be relevant on the issue of the intensity and persistence of [the] plaintiff's symptoms, which in turn affect [the] plaintiff's capacity for work and hence the ultimate disability determination"); White v. Comm'r of Soc. Sec., 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (citing 20 C.F.R. § 416.913(a); § 416.913(d)) (consideration of social worker's report was particularly important given that he was the sole source with a regular treatment relationship with the plaintiff). If the ALJ decides to discount NP Malinowski's opinion, he must provide good reasons. See Kentile,

2014 WL 2014 WL 3534905 at *8 ("The Regulations require the ALJ to engage in a detailed analysis of [the nurse practitioner's] treatment and provide 'good reasons' for discounting his opinions.") (citing <u>Stytzer v. Astrue</u>, 2010 WL 3907771, *6 (N.D.N.Y. 2010)).

## VI.  Conclusion

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Doc. 9) is denied and plaintiff's motion (Doc. 8) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     December 16, 2015
           Rochester, New York.